IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PARISA FARAHANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHIP LAITINEN, in his official capacity as Deputy Chief of Mission, U.S. Embassy in Armenia, and ANTONY BLINKEN, in his official capacity as Secretary of the United States Department of State, | ) ) ) ) ) ) ) ) | 1:23-CV-922 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case concerns an allegation of unreasonable delay in the adjudication of the visa applications of Plaintiff's minor child and husband by the United States Department of State. Before the court is the motion to dismiss by Defendants Deputy Chief of Mission Chip Laitinen and Secretary of State Antony Blinken. (Doc. 6.) Plaintiff Parisa Farahani has responded in opposition (Doc. 8), and Defendants have replied (Doc. 10). For the reasons set forth below, the motion will be denied.

I. BACKGROUND

The facts alleged in the complaint (Doc. 1), which the court accepts as true for the purpose of Defendants' motion to dismiss, show the following:

Dr. Farahani is a citizen of Iran who resides in Durham, North Carolina. (Doc. 1 ¶ 10.) Defendant Chip Laitinen is the Deputy Chief of Mission for the U.S. Embassy in Armenia. (Id. ¶ 11.) He is allegedly responsible for processing and adjudicating visa applications. (Id.) Defendant Antony Blinken is the United States Secretary of State and oversees the department responsible for adjudicating visa applications. (Id. ¶ 12.) Both Defendants are sued in their respective official capacities.

In February 2023, United States Citizenship and Immigration Services ("USCIS") approved Dr. Farahani's H-1B visa petition that her employer filed on her behalf. (Id. ¶ 14.) Dr. Farahani is medical doctor with a Master of Public Health who works as a clinical trials researcher. (Id. ¶ 4.) Her husband, Mohammad Taherahmadi ("Dr. Taherahmadi"), and her one-year-old son, Sepehr Taherahmadi ("Sepehr"), are derivative beneficiaries of the visa petition. (Id. ¶¶ 3, 4.)

In March 2023, Dr. Farahani, Dr. Taherahmadi, and Sepehr were interviewed at the U.S. Embassy in Armenia in connection with their visa application. (Id. ¶ 15.) After the interview, the officer informed them that the visa applications were being placed in "administrative processing." (Id. ¶ 16.) Dr. Farahani's visa was issued that same month, but Dr. Taherahmadi's and Sepehr's visa applications remained in administrative processing. (Id. ¶ 17.)

In July 2023, U.S. Senator Thom Tillis's office contacted the U.S. Embassy in Armenia regarding the application and was told that it was still in administrative processing. (Id. ¶ 18.) U.S. Senator Ted Budd's office did the same in August 2023 and received the same response. (Id. ¶ 19.) Dr. Farahani has herself inquired "on numerous occasions and received no meaningful response." (Id. ¶ 20.) Dr. Farahani asserts that "[i]t is unclear what processes, if any, the U.S. Embassy in Armenia is actually working on," and that the "U.S. Embassy in Armenia has provided Plaintiff and her family with no meaningful status updates, nor does it publish any information on processing times for 'administrative processing.'" (Id.)

In reliance on these allegations, Dr. Farahani pleads two claims for relief. First, she alleges that Defendants' delay in the adjudication of her family's visa applications is unreasonable, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b). (Id. ¶¶ 14-31.) Second, she seeks mandamus relief under the All Writs Act, 28 U.S.C. § 1361, for the delay. (Id. ¶¶ 32-37.) Dr. Farahani seeks an order mandating that Defendants process her family's visa applications within fifteen calendar days of the court's order or as soon as reasonably practicable, as well as attorney's fees and costs. (Id. ¶ 38.)

On January 19, 2024, Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state

3

a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b).  According to a January 2024 affidavit by a U.S. Department of State attorney attached to the motion to dismiss, Sepehr's visa issued in November 2023.  (Doc. 7-1.)  As of the affidavit, Dr. Taherahmadi's visa had not yet issued.  (Id.)  Dr. Farahani has not addressed the accuracy of the affidavit.  The motion has been fully briefed and is ready for resolution.

**II. ANALYSIS**

    **A.  Rule 12(b)(1) Motion**

Defendants only argue that the court lacks subject matter jurisdiction because Dr. Farahani has not alleged a "specific, non-discretionary duty" to act.  (Doc. 7 at 10-11.)  As Plaintiffs argue, this argument is unavailing, as the APA creates a non-discretionary duty to adjudicate a visa application within a reasonable period of time.  5 U.S.C. § 555(b) (requiring agency to pass upon a matter presented to it "within a reasonable time"); 5 U.S.C. § 706(1) (granting court authority to "compel agency action unlawfully withheld or unreasonably delayed"); Gonzalez v. Cuccinelli, 985 F.3d 357, 374-76 (4th Cir. 2021) (remanding unreasonable delay claim for re-consideration under Rule 12(b)(6)); Pulido v. Cuccinelli, 497 F. Supp. 3d 79, 94-95 (D.S.C. 2020) (reviewing unreasonable delay claim on the merits); Giliana v. Blinken, 596 F. Supp. 3d 13, 19-20 (D.D.C. 2022) (same); Bamba v. Jaddou, No. 1:23-CV-357, 2023 WL 5839593, at *3 (E.D. Va. Aug.

4

18, 2023) (same). The court thus turns to Defendants' Rule 12(b)(6) motion.[1]

### B. Rule 12(b)(6) Motion

#### 1. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

---

[1] Dr. Farahani's complaint may be moot as it relates to Sepehr, as his visa issued in November 2023, according to Defendants. (Doc. 7-1.) Defendants do not move to dismiss based on mootness, and Dr. Farahani has not yet been heard on this factual matter. Accordingly, that issue is not properly presented at this time.

5

Case 1:23-cv-00922-TDS-JLW  Document 11  Filed 05/30/24  Page 5 of 19

However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## 2. Consular Non-Reviewability

Defendants first argue that Dr. Farahani's complaint fails to state a claim because her unreasonable delay claim is barred by the doctrine of consular non-reviewability. (Doc. 7 at 6-7.)[2] Defendants urge that consular non-reviewability prohibits judicial

---

[2] Courts have not treated consular non-reviewability as jurisdictional, or have at least side-stepped the question. See Del Valle v. Sec'y of State, United States Dep't of State, 16 F.4th 832, 838 (11th Cir. 2021) ("[W]hen the doctrine of consular non-reviewability bars review of a consular official's decision, a district court should dismiss a suit challenging the decision under Rule 12(b)(6)."); Sesay v. United States, 984 F.3d 312, 315-17 (4th Cir. 2021) (not discussing issue and affirming district court that did not decide the issue); Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 123 (2d Cir. 2009) (stating that "perhaps" consular non-reviewability "withdraw[s]" section 1331 jurisdiction or "perhaps" is a "prudential consideration"). Notably, the Supreme Court in Trump v. Hawaii, 585 U.S. 667 (2018), assumed without deciding that consular non-reviewability does not bar review, which may suggest that it is non-jurisdictional. Id. at 682-83; see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998) (prohibiting "hypothetical jurisdiction").

6

review here because Dr. Taherahmadi's application was "refused" on the day of his interview in March 2023 and "remains refused." (Doc. 7 at 8.) In response, Dr. Farahani argues that numerous courts have held that refusals under 8 U.S.C. § 1201(g) are not final adjudications where the applications undergo further "administrative processing," as Dr. Taherahmadi's and Sepehr's applications allegedly have. (Doc. 8 at 13-14.)[3] Defendants concede that it has "offered [Dr. Taherahmadi] a way to submit additional information to establish his eligibility for a visa via administrative processing." (Doc. 10 at 5.)

Under 8 U.S.C. § 1101 et seq., a foreign national generally may be admitted into the United States after being issued a visa. As here, a U.S. employer may file a petition with USCIS on behalf of a foreign national beneficiary to receive an H-1B visa. 8 C.F.R. § 214.2(h)(2)(i)(A). Once USCIS approves the petition, the foreign national may schedule an interview at a U.S. embassy, where his or her spouse and children can apply for an H-4 derivative visa. 22 C.F.R. §§ 41.102(a), 41.53(a)(3).

The consular officer may not issue the visa if "it appears to

---

[3] In support, Dr. Farahani attaches the administrative processing notice she received from the U.S. Embassy in Armenia that states that the application has been "refused . . . pending the receipt and review of" requested information and documents and that the application will "continue to [be] process[ed]" once received. (Doc. 8-1.) Even if the court took judicial notice of this notice, Dr. Farahani has not demonstrated that the language of this notice should influence the determination of whether consular non-reviewability applies here.

7

the consular officer" that the foreign national "is ineligible to receive a visa . . . under [8 U.S.C. § 1182], or any other provision of law"; if the application fails to comply with Chapter 12 of the Title 8 of the U.S. Code; or if "the consular officer knows or has reason to believe" that the foreign national is ineligible for a visa. 8 U.S.C. § 1201(g); 22 C.F.R. § 40.6 (discussing meaning of "reason to believe"). After the interview, the consular officer "must issue the visa, [or] refuse the visa." 22 C.F.R. § 41.121(a).

Relevant here, any noncitizen that is a national of a country determined by the Secretary of State to be a state sponsor of international terrorism may not receive a nonimmigrant visa, "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such [noncitizen] does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735. Iran is a designated state sponsor of international terrorism. Dep't of State, State Sponsors of Terrorism, at https://www.state.gov/state-sponsors-of-terrorism (last accessed May 29, 2024).

Under the doctrine of consular non-reviewability, "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." United States ex rel. Knauff

v. Shaughnessy, 338 U.S. 537, 543 (1950); see also Kleindienst v. Mandel, 408 U.S. 753, 765-66 (1972). "The Supreme Court has unambiguously instructed that absent some clear directive from Congress or an affirmative showing of bad faith, the government must simply provide a valid ineligibility provision as the basis for the visa denial." Sesay v. United States, 984 F.3d 312, 316 (4th Cir. 2021) (citing Hawaii, 585 U.S. at 703-04). While the decision to admit a person to the United States is inherently political, and while the agency's ultimate decision whether or not to grant a visa to a foreign national is generally unreviewable, the courts have nevertheless found themselves competent to review whether a consular officer has engaged in unreasonable delay in making that decision. See Norton v. S. Utah Wilderness All., 542 U.S. 55, 65 (2004) ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.").

While a consular officer must grant or refuse a visa application at the interview, 22 C.F.R. § 41.121(a), a refusal may be entered for "administrative processing," which provides an applicant an opportunity to supply additional information. 9 Foreign Affairs Manual ("FAM") 306.2-2(A), at https://fam.state.gov/Volumes/Details/09FAM (last accessed May 29, 2024); U.S. Dep't of State, Administrative Processing

9

Information, at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last accessed May 29, 2024). Courts have held that refusals entered for administrative processing are not final, and thus that consular non-reviewability does not bar judicial review of unreasonable delay claims for such visa applications. Joorabi v. Pompeo, 464 F. Supp. 3d 93, 99-100 (D.D.C. 2020); Vulupala v. Barr, 438 F. Supp. 3d 93, 97-100 (D.D.C. 2020) (discussing that treating initial refusal pending administrative processing as final would "elevate[] form over substance" and ignore "what is actually happening"); Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 290-92 (D.D.C. 2016) (citing Patel v. Reno, 134 F.3d 929, 931-32 (9th Cir. 1997); cf. Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (holding claim for unreasonable delay was not mooted by refusal following interview).

Defendants' position that a refusal at the consular interview is final contradicts the persuasive reasoning of numerous courts and would, in effect, permit administrative processing to carry on indefinitely without judicial review. Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 13 (D.D.C. 2022) (discussing that a consular official should not have discretion to "indefinitely [] delay a decision on a visa application" entered for administrative processing). Accordingly, consular non-

10

reviewability does not alone preclude Dr. Farahani's claims at this stage.

### 3. Unreasonable Delay

Defendants argue that Dr. Farahani failed to state a claim because any delay in Dr. Taherahmadi's application is not unreasonable as a matter of law. (Doc. 7 at 15.) The Fourth Circuit has adopted the "TRAC factors" as guidance to determine whether an agency action is unreasonably delayed. Gonzalez, 985 F.3d at 375 (citing TRAC v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984)). TRAC's guiding principles are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. "A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and

should not typically be resolved at that stage." Id.; see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

As to the first two factors, Defendants argue that the alleged delay of less than one year (as of the complaint) does not violate any rule of reason. (Doc. 7 at 17.) In support, Defendants note that Congress has not imposed any timeline and that other courts have dismissed complaints alleging longer delays. (Id. at 17-18.) As to factors three and five, Defendants concede that the delay has "profoundly impacted [Dr. Farahani's] family's lives," but argues that prioritizing Dr. Taherahmadi's application would prejudice other applicants who "may have experienced similar or worse impacts from a delay." (Id. at 20.) As to the fourth factor, Defendants assert that the "re-adjudication of [Dr. Taherahmadi's] visa application is in line to be completed, along with many, many other visa applications," and that the Department's priorities should not be altered by "judicial fiat." (Id. at 19-20 (quoting Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. 2021)).)[4] In response, Dr. Farahani principally argues that the

---

[4] The parties agree that the sixth factor is not relevant here. (Doc. 7 at 21; Doc. 8 at 21.)

TRAC inquiry is too fact-intensive to permit dismissal at this stage and that she has otherwise alleged sufficient facts to warrant inquiry into the cause of the delay. (Doc. 8 at 17-25.)

### a. TRAC Factors 1 and 2

While there is no rule against assessing reasonableness under TRAC at the Rule 12(b)(6) stage, as Dr. Farahani suggests (id. at 17-18), the court agrees with her that the first two factors require further fact development here. It is true that, in other contexts, courts have dismissed complaints alleging longer delays than alleged here, but the "Supreme Court has not, so far, provided clear guidance on how to determine how long is too long to wait for an agency adjudication." Gonzalez, 985 F.3d at 375. "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to assess whether a given period of delay is reasonable. Sarlak v. Pompeo, 1:20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (citing Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). Rather than decide reasonableness "in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful," the inquiry "will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee Wampanoag, 336 F.3d at 1102. As part of this inquiry, courts may look to whether the complaint "points to [any]thing specific about the relevant visa

13

application to distinguish it from the multitude of similar cases." Begum v. United States Dep't of State, 1:22-CV-478, 2022 WL 16575703, at *8 (D. Md. Oct. 31, 2022).

The cases cited by Defendants present some unique facts from those alleged in the complaint, principally because they concern delays in scheduling interviews — i.e., an agency task that courts have typically found operates as a "first-in, first-out" queue. In Ali v. U.S. Dep't of State, 676 F. Supp. 3d 460, 471-72 (E.D.N.C. 2023), for example, the court found that an approximately 18-month delay to schedule a visa interview, in part due to a COVID-19-induced backlog, favored the agency. In Mueller v. Blinken, 682 F. Supp. 3d 528, 538-39 (E.D. Va. 2023), the court found an 8-month delay to schedule a visa interview favored the agency, in part, because the plaintiff there failed to identify any facts that indicated that the visa application was being treated differently than similarly-situated applications. And in Begum, 2022 WL 16575703, at *7-8, the court found that a 40-month delay to schedule an interview favored the agency likewise because the plaintiff alleged no facts to suggest that the application was delayed more than similarly-situated applications.

By contrast, Dr. Farahani's family has already interviewed for visas with a consular officer. (Doc. 1 ¶ 15.) Although Dr. Farahani, Sepehr, and Dr. Taherahmadi were placed in "administrative processing" at the end of the interview, Dr.

14

Farahani's visa issued within thirty days and, according to Defendants, the visa for their one-year-old son, Sepehr, issued within eight months.  (Id. ¶ 17; Doc. 7-1.)  Over one year later, Dr. Taherahmadi's visa application remains in administrative processing, allegedly without explanation to Dr. Farahani.  (Doc. 1 ¶¶ 18-20); see also U.S. Embassy in Armenia, Nonimmigrant Visas, at https://am.usembassy.gov/visas/nonimmigrant-visas (last accessed May 29, 2024) ("We cannot provide an exact timeline for the conclusion of your administrative processing, but it is not unusual for it to take several months." (emphasis added)).  Dr. Farahani also alleges that both of North Carolina's United States Senators' inquiries of the agency as to the delay have received a similar lack of response.  (Doc. 1 ¶¶ 18, 19.)

At this stage, the court must view all facts in the light most favorable to Dr. Farahani, and thus cannot conclude that Defendants' cases — which involved a different administrative task and lacked allegations that similarly-situated applications were more quickly processed — necessarily show the delay in Dr. Farahani's case is reasonable.  Further, although consular officers undoubtedly "possess expertise in matters falling outside judicial competency, including local conditions in foreign countries, diplomatic relationships and protocols, and national security needs," Sesay, 984 F.3d at 315, the State Department attorney's sworn representation that "additional security

15

screening is ongoing" is insufficient to require dismissal at this stage. (See Doc. 7-1); see also Al-Gharawy, 617 F. Supp. 3d at 13-14 ("The Court acknowledges the possibility that, on rare occasion, a delay in adjudicating a visa application or a group of visa applications might arise out of a broader national security or foreign affairs strategy by the Executive.").

### b. TRAC Factor 3 and 5

The third and fifth TRAC factors weigh in favor of Dr. Farahani. Dr. Farahani alleges that her family faces "emotional hardship due to the delay," namely that she is now separated from her one-year-old son and experiences "depression and . . . heightened anxiety, often resulting in palpitations and shortness of breath." (Doc. 1 ¶ 3.) Dr. Farahani also alleges that the time difference "makes communication challenging and leads to disruptions in [her] routine, making it difficult for her to focus at work as a clinical trials MD MPH researcher and to engage in academic activities." (Id. ¶ 4.)[5] Defendants' arguments with respect to factors 3 and 5 are redundant of their arguments for the fourth TRAC factor and do not meaningfully rebut Dr. Farahani's allegations. (Doc. 7 at 20 (arguing that "advancing [Dr. Taherahmadi's] application would simply benefit [Dr. Farahani] to

---

[5] No party has indicated whether Sepehr has traveled to the United States since his visa was issued, so the court presumes for the purpose of this motion that he has not.

16

the detriment of other noncitizens").)

### c. TRAC Factor 4

Defendants argue that this factor "weighs heavily" in their favor. (Id. at 19.) Defendants maintain that a court order for Dr. Farahani would essentially move Dr. Taherahmadi to the "front of the line" and "move all others back one space and produce no net gain." (Id. (quoting Begum, 2022 WL 16575703, at *8).)

The court has insufficient information to assess "how the agency implements its rules," Gonzalez, 985 F.3d at 376, and thus insufficient information to assess whether the requested relief would simply put Dr. Taherahmadi's visa application "at the head of the queue," as Defendants argue. (Doc. 7 at 19.) While the court has "no basis for reordering agency priorities," Gonzalez, 985 F.3d at 376, the court cannot accept Defendants' factual contentions regarding the U.S. Embassy's priorities and resource limitations, where it is plausible, at this stage and on this record, that administrative processing does not operate as a "first-in, first-out" queue. (Doc. 1 ¶ 17 (Dr. Farahani alleging that she and her family entered administrative processing simultaneously and that only her visa issued within 30 days); Doc. 7-1 (Defendants attesting that Sepehr's visa issued in November 2023 and that administrative processing continues for Dr. Taherahmadi).) These arguments are ill-suited for assessment on motion to dismiss. Al-Gharawy, 617 F. Supp. 3d at 19 (deferring

17

evaluation of arguments until summary judgment, "where the parties can present the Court with evidence concerning the operation of the Embassy's queue"); Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 454-55 (6th Cir. 2022) (sympathizing with burden on agency but rejecting notion that agencies should be "sole arbiters of what constitutes an 'unreasonable delay'" simply because they are "best positioned to manage their resources").

In sum, while Defendants may ultimately demonstrate why additional delay is not unreasonable as to what appears to be the sole remaining visa for Dr. Taherahmadi, an Iranian national, they have not met their burden of showing that the TRAC factors weigh in their favor as a matter of law. The motion to dismiss the complaint on the ground that Dr. Farahani has not plausibly alleged an unreasonable delay will therefore be denied.[6]

### III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that the Defendants' motion to dismiss (Doc. 6) is DENIED.

---

[6] Although Dr. Farahani brings two causes of action, courts have reviewed unreasonable delay claims and mandamus claims together under the same standard. Bagherian v. Pompeo, 442 F. Supp. 3d 87, 96 (D.D.C. 2020); Jahangiri v. Blinken, 23-cv-2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024); South Carolina v. United States, 907 F.3d 742, 759 (4th Cir. 2018) ("[C]laims of unreasonable delay can be properly addressed through a mandamus proceeding."). The parties have not advocated for treating her claims differently at this stage.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge
May 30, 2024