IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PARISA FARAHANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV922 |
| | ) | |
| CHIP LAITINEN, in his official | ) | |
| capacity as Deputy Chief of | ) | |
| Mission, U.S. Embassy in | ) | |
| Armenia, and MARCO RUBIO, in | ) | |
| his official capacity as | ) | |
| Secretary of the United States | ) | |
| Department of State,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case returns to the court on the motion of Defendants for reconsideration of its May 30, 2024 memorandum opinion and order denying their motion to dismiss. (Doc. 13.) For the reasons set forth below, the court's prior decision will be vacated, the motion to dismiss will be granted, and the complaint will be dismissed.

I. BACKGROUND

The facts alleged in the complaint (Doc. 1), which the court accepts as true for the purpose of Defendants' motion for reconsideration, show the following:

---

[1] Marco Rubio now serves as Secretary of State and is substituted as successor to Antony Blinken and automatically replaces him pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff Parisa Farahani is a medical doctor with a Master of Public Health who works as a clinical trials researcher. (Id. ¶ 4.) She is a citizen of Iran who resides in Durham, North Carolina. (Id. ¶ 10.) Defendant Chip Laitinen is the Deputy Chief of Mission for the U.S. Embassy in Armenia. (Id. ¶ 11.) He is allegedly responsible for processing and adjudicating visa applications. (Id.) Defendant Marco Rubio is the United States Secretary of State, who oversees the department responsible for adjudicating visa applications. (See id. ¶ 12.) Both Defendants are sued in their respective official capacities.

In February 2023, United States Citizenship and Immigration Services ("USCIS") approved Dr. Farahani's H-1B visa petition that her employer filed on her behalf. (Id. ¶ 14.) Her husband, Mohammad Taherahmadi ("Dr. Taherahmadi"), and her one-year-old son, Sepehr Taherahmadi ("Sepehr"), are derivative beneficiaries of the visa petition. (Id. ¶ 1.)

In March 2023, Dr. Farahani, Dr. Taherahmadi, and Sepehr were interviewed at the U.S. Embassy in Armenia in connection with their visa application. (Id. ¶ 15.) After the interview, the officer informed them that the visa applications were being placed in "administrative processing." (Id. ¶ 16.) While not provided in the complaint, Dr. Farahani has acknowledged in her briefing on the motion to dismiss and the motion for reconsideration that her family's visa applications were placed in administrative

2

processing, and thus refused pursuant to 8 U.S.C. § 1201(g). (See, e.g., Doc. 8 at 7, 13; Doc. 15 at 1, 11-12.)  Dr. Farahani's visa was issued that same month, but Dr. Taherahmadi's and Sepehr's visa applications remained in administrative processing.  (Doc. 1 ¶ 17.)

In July 2023, U.S. Senator Thom Tillis's office contacted the U.S. Embassy in Armenia regarding the application and was told that it was still in administrative processing. (Id. ¶ 18.) U.S. Senator Ted Budd's office did the same in August 2023 and received the same response. (Id. ¶ 19.) Dr. Farahani has herself inquired "on numerous occasions and received no meaningful responses." (Id. ¶ 20.) Dr. Farahani asserts that "[i]t is unclear what processes, if any, the U.S. Embassy in Armenia is actually working on," and that the "U.S. Embassy in Armenia has provided Plaintiff and her family with no meaningful status updates, nor does it publish any information on processing times for 'administrative processing.'" (Id.)

Dr. Farahani brings two claims against Defendants in their official capacities arising out of the processing of her family's visa applications.  First, she claims that the delay in Defendants' adjudication of the visa applications is unreasonable, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b).  (Doc. 1 ¶¶ 14-31.)  Second, she requests mandamus relief under the All Writs Act, 28 U.S.C. § 1361, for the delay.  (Doc.

3

1 ¶¶ 32-37.) Dr. Farahani seeks an order requiring Defendants to process her family's visa applications within fifteen calendar days of the court's order or as soon as reasonably practicable, in addition to an award of attorney's fees and costs. (Id. ¶ 38.)

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 6.) An affidavit attached to the motion to dismiss stated that the visa for Dr. Farahani's son, Sepehr, was issued in November 2023 (Doc. 7-1), and Dr. Farahani confirmed this in her most recent brief (Doc. 15 at 2). So, the claims as to Sepehr are moot.

On May 30, 2024, the court denied the motion to dismiss (Doc. 11), and on July 15, 2024, Defendants moved for reconsideration (Doc. 13). The motion is fully briefed and ready for decision.

## II. ANALYSIS

### A. Rule 54(b) Standard

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A court may revise an interlocutory order under Rule 54(b) in three circumstances: "(1) 'a subsequent trial producing substantially different evidence'; (2) a change in

4

applicable law; or (3) clear error causing 'manifest injustice.'" Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)); U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018).

However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e). Am. Canoe Ass'n, 326 F.3d at 514–15. The Rule 54(b) standard departs from the Rule 59(e) standard "by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." U.S. Tobacco Coop. Inc., 899 F.3d at 257 (quoting Carlson, 856 F.3d at 325). "Although Rule 54(b) motions for reconsideration are held to a less stringent standard than motions under Rule 59(e), such motions 'should not be used to rehash arguments the court has already considered' or 'to raise new arguments or evidence that could have been raised previously.'" Hatch v. Demayo, No. 1:16CV925, 2018 WL 6003548, at *1 (M.D.N.C. Nov. 15, 2018) (slip copy) (quoting South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). And while the court's authority to reconsider interlocutory orders "may be tempered at times by concerns of finality and judicial economy," "[t]he ultimate responsibility of the federal courts . . . is to

5

reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.

**B. Defendants' Duty to Adjudicate Visa Applications**

Defendants first argue that the court incorrectly concluded that it had subject matter jurisdiction in this case after identifying "a non-discretionary duty to adjudicate a visa application within a reasonable period of time" pursuant to the APA, 5 U.S.C. § 555(b). (Doc. 14 at 4 (quoting Doc. 11 at 4).) They contend that per Gonzalez v. Cuccinelli, 985 F.3d 357 (4th Cir. 2021), a discrete, non-discretionary duty to adjudicate visa applications cannot be derived from the APA. (Doc. 14 at 5-6.) Rather, they argue, the Fourth Circuit looks to the enabling statute of the agency – the Immigration and Nationality Act ("INA") in Gonzalez and this case - and the agency's regulations. (Id. at 5.)

Dr. Farahani responds that Defendants misunderstand Gonzalez, explaining that the court conducted two analyses: one where the court did find a non-discretionary duty to adjudicate with respect to certain visa applicants, and another where the court found that the labor certification process was committed to agency discretion. (Doc. 15 at 3-4.) She contends that Defendants "graft the Gonzalez Court's 'no discretionary duty' of the labor certification issue onto the complete Gonzalez decision." (Id. at 4.) She further argues that a discrete, non-discretionary duty

6

can be found under the APA, 5 U.S.C. § 555(b), and that the Department of State's continued adjudication of "nonimmigrant H-1B visas constitutes an implied admission of this duty and acts to estop Defendants from using their 'discretion' to indefinitely delay visa adjudications." (Id. at 6.) Finally, Dr. Farahani points out that other courts, though not in this circuit, "have found that there is a [non-discretionary] duty to adjudicate visas under the INA and to do so within a reasonable time under the APA." (Id. at 7 (collecting cases).)

In Gonzalez, the Fourth Circuit first found that the USCIS was not required to adjudicate requests for work authorizations pending approval of immigrants' U-Visa petitions (available to victims of serious crimes who cooperated with law enforcement), and so the court lacked jurisdiction over the plaintiffs' unreasonable delay claims. 985 F.3d at 374. After acknowledging that the APA directed agencies to "proceed to conclude a matter presented to it" "within a reasonable time," the court failed to find a discrete, non-discretionary duty to adjudicate the work authorizations, looking to the INA, 8 U.S.C. §§ 1101(a)(27)(J), 1184(p)(6), and an agency regulation. Id. at 365-74. The court then found that the claims of unreasonable delay in the adjudication of the plaintiffs' petitions for U-Visas were reviewable, again looking to the INA, 8 U.S.C. § 1101(a)(15)(U), and the agency's regulations. Id. at 374 n.10.

7

Last year, in Lovo v. Miller, 107 F.4th 199 (4th Cir. 2024), the Fourth Circuit took the same approach. A married couple brought a claim of unreasonable delay against USCIS officials for a delay in the adjudication of a waiver application.[2] Lovo, 107 F.4th at 202. Determining whether the agency action had been "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), the court explained that it "must decide whether the INA or its enacting regulation require USCIS to adjudicate [the plaintiff's] Provisional Waiver Application." Lovo, 107 F.4th at 211. "[T]he parties agree[d] that the statutory provisions of the INA [did] not require USCIS to adjudicate Provisional Waiver Applications," so the court looked to USCIS's regulations, specifically 8 C.F.R. § 212.7(e). Id. at 212. The court concluded that the regulations also did not require that USCIS adjudicate Provisional Waiver Applications and thus that the claim of delay was not reviewable. Id. at 212-16.

In its May 30, 2024 memorandum opinion and order, this court stated that "the APA creates a non-discretionary duty to adjudicate a visa application within a reasonable time." (Doc. 11 at 4 (citations omitted).) To the extent that this could be said to reflect a non-discretionary duty to adjudicate created by the APA

---

[2] Such an application seeks a waiver of the provision of law that requires a noncitizen to leave the country and wait ten years before applying for a visa. 107 F.4th at 202-03.

rather than the INA or agency regulations, Defendants are correct that this approach conflicts with the Fourth Circuit's analyses in Gonzalez and Lovo.

Nevertheless, both the INA and agency regulations create a non-discretionary duty to adjudicate visa applications. The INA provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). Agency regulations specifically direct that "the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under the INA 243(d), discontinue granting the visa." 22 C.F.R. § 41.121. This use of mandatory language, specifically "shall" and "must," creates a discrete, non-discretionary duty to adjudicate a visa application. See Lovo, 107 F.4th at 211 ("[T]he presence of 'unmistakably mandatory' language . . . can provide sufficient evidence of the unequivocal command required for [the court] to hold that an agency is compelled to act." (quoting Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993))); see also Gonzalez, 985 F.3d at 371 (comparing "the discretionary 'may' [to the] mandatory 'shall'").

Even so, a refusal under § 1201(g) fulfills this discrete, non-discretionary duty. Section 1201(g) provides that a visa application must be refused if "the application fails to comply with [the regulations]" or if "the consular officer knows or has reason to believe that [the applicant] is ineligible to receive a

9

visa . . . under section 1182 of this title, or any other provision of law . . . ." The Department of State's website explains that after refusing an application, "a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa." U.S. Dep't of State, <u>Administrative Processing Information</u>, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Jan. 30, 2025). "In such cases," it continues, "<u>refused</u> visa applications warrant further administrative processing." <u>Id.</u> (emphasis added).

While the INA's implementing regulations, specifically 22 C.F.R. § 41.121(a), require a consular officer to either issue or refuse a visa, "[c]onspicuously absent from this provision is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" <u>Yaghoubnezhad v. Stufft</u>, 734 F. Supp. 3d 87, 101 (D.D.C. 2024); <u>see also</u> <u>Ramizi v. Blinken</u>, No. 5:23-CV-000730-M, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal.") The consular officer in this case, as Defendants contend, discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were

10

being placed in administrative processing. (See Doc. 1 ¶ 17); see also Aslam v. Heller, No. 1:23-CV-971, 2024 WL 3535389, at \*6 (M.D.N.C. July 23, 2024) ("[A § 1201(g)] denial is final unless and until it has been overturned.").[3] Therefore, Defendants are entitled to dismissal, and their motion will be granted.

Defendants also argue that Dr. Farahani's claims are barred by the doctrine of consular non-reviewability. (Doc. 14 at 10.) Because the court's May 30, 2024 memorandum opinion and order will be vacated and the complaint will be dismissed, this issue is moot.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendants' motion for reconsideration (Doc. 13) is GRANTED and the court's May 30, 2024 memorandum opinion and order (Doc. 11) is VACATED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss (Doc. 6) is GRANTED and Dr. Farahani's complaint (Doc. 1) is DISMISSED for lack of subject matter jurisdiction.

                                            /s/   Thomas D. Schroeder
                                              United States District Judge

January 31, 2025

---

[3] Although not reflected in Westlaw, the recommendation was adopted by the district judge. See Aslam v. Heller, No. 1:23-CV-971, Doc. 13 (M.D.N.C. Aug. 20, 2024).